IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERYME MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20 C 6552 |
| | ) |
| RICHARD ORENSTEIN, RANDY PFISTER, and WEXFORD HEALTH SOURCES, INC., | ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Jeryme Morgan, who previously was imprisoned at Stateville Correctional Center, has sued two prison officials and Wexford Health Sources, Inc., which provides healthcare services at the prison, under 42 U.S.C. § 1983. Morgan alleges that Dr. Richard Orenstein, a healthcare provider, and Randy Pfister, the former warden of Stateville, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Morgan has also asserted a claim against Wexford for maintaining a policy or custom of denying medical treatment due to cost considerations. All of the defendants have moved for summary judgment.[1]

---

[1] Orenstein and Wexford argue that multiple asserted facts in their Local Rule 56.1 statement should be deemed admitted because Morgan's responses did not comply with Local Rule 56.1(e)(3). The Seventh Circuit has held that a nonmovant's failure to adhere to the local rules may result in an admission of the facts set out in the movant's statement of material facts. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). However, "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880,

**Background**

In 2001, Morgan was involved in an altercation with another inmate that resulted in an injury to Morgan's jaw. He was diagnosed with temporomandibular joint (TMJ) dysfunction in 2007. Due to this condition Morgan has experienced a variety of symptoms, including lock jaw, swelling and pain. He began receiving steroid injections to treat his TMJ condition in 2011. In the fall of 2011, a physician ordered an x-ray for Morgan. Radiology notes from Morgan's x-ray appointment include a handwritten note that reads "no injury." Def.'s L.R. 56.1 Stmt., Ex. H at Lawrence 1CC MR 000270. The parties dispute whether this note refers to a finding from the x-ray results. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 25. Shortly after the x-ray, Morgan began requesting a referral for an MRI. In February 2015, Morgan received two referrals for MRIs that were reviewed via Wexford's collegial review process, but medical professionals denied both requests.

Morgan was imprisoned at Stateville from February 7, 2019 to April 23, 2021. During his time at Stateville, he submitted multiple grievances requesting an MRI screening and surgery for his jaw. Morgan also scheduled multiple appointments with Dr. Orenstein, a general dentist at the facility. Morgan testified that during a conversation about treatment options, Dr. Orenstein told him that "they probably would never approve to get [him] an MRI" and that he "probably would not get the surgery." Def.'s Mot for Summ. J., Ex. B at 53:10-19. Morgan also testified that at one point, Dr. Orenstein did not provide him with pain medication because he was taking muscle

---

887 (7th Cir. 2011) (citation omitted). The Court opts not to penalize Morgan for noncompliance with Local Rule 56.1, and doing so would make no difference in the outcome in any event.

relaxants, *id.* at 54:4-8, but instead instructed Morgan to place a warm towel on his face to alleviate his jaw pain. *Id.* at 54:12-20. Morgan informed Dr. Orenstein that the water in his sink "doesn't get warm enough to add any kind of relief." *Id.* at 54:21-55:6. After his initial appointment with Dr. Orenstein, Morgan was referred to a specialist at Joliet Oral Surgeons. Throughout Morgan's time at Stateville, the oral surgeon provided steroid injections for Morgan's lock jaw symptoms, as well as pain medication. In June 2020, the oral surgeon noted that Morgan's TMJ condition may stem from a rolled disc in his joint, and he noted that Morgan "may need surgery." Defs.' L.R. 56.1 Stmt. ¶ 30. It does not appear that the oral surgeon's deposition was taken, so there is no further explanation in the record regarding this notation.

During the period relevant to this lawsuit, Pfister served as the warden of Stateville. Morgan testified that he had "five or more" in-person conversations with Pfister about his TMJ condition during Pfister's tours of the facility. Def.'s Mot for Summ. J., Ex. B at 77:23-78:1. Morgan stated that during one such conversation he told Pfister that his dentist was "not providing [him] any kind of real pain relief" and expressed his frustration with Dr. Orenstein's instructions to apply a warm compress to his face. *Id.* at 78:14-79:3. Morgan testified that Pfister had no knowledge of TMJ conditions prior to their conversations but that he told Pfister about his symptoms, including lock jaw, muscle aches, and cramps. *Id.* at 79:4-19.

Morgan also testified that he sent Pfister two copies of grievances he had written about his medical treatment and also sent Pfister letters through certified mail "on a couple of occasions." *Id.* at 76:17-77:5. An individual from Pfister's office signed the grievances, leading Morgan to believe that "[w]hoever was authorized to sign for

3

[Pfister's] mail received it." *Id.* at 81:6-19. Morgan also personally handed Pfister a letter stating that he had not received a response to his earlier grievances and "asking for an update" on his prior complaints. *Id.* at 81:20-82:1. Morgan never received replies to his written communications to Pfister. *Id.* at 76:17-77:5; 82:6-8.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, Morgan must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (citation omitted). Because the defendants have moved for summary judgment, the evidence is considered in the light most favorable to Morgan. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021).

**A.     Deliberate indifference claims**

The Eighth Amendment's prohibition on cruel and unusual punishment "imposes a duty upon states to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

A deliberate indifference claim includes both an objective and a subjective

4

element. For the objective element, a plaintiff must show that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective element, the plaintiff must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834).

The defendants do not dispute that Morgan suffered from an objectively serious medical condition. The Court therefore will proceed to the question of deliberate indifference. To survive summary judgment, Morgan must provide evidence from which a reasonable jury could find that the defendants "knew of [his] serious medical condition but intentionally or recklessly disregarded it." *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008).

1.  **Dr. Orenstein**

A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). To display deliberate indifference a medical professional's treatment decision must "represent[] so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Morgan argues that Dr. Orenstein was deliberately indifferent to his TMJ condition by failing to refer Morgan for an MRI. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3. Dr. Orenstein responds that as a general dentist he did not have the authority to order this course of treatment for Morgan. Specifically, Dr. Orenstein testified that only

5

specialists are authorized to request MRIs. Defs.' L.R. 56.1 Stmt. ¶ 42; *Id.*, Ex. B at 42:7-43:24. Additionally, Morgan testified that during a visit Dr. Orenstein "mentioned that *they* probably would never approve to get me an MRI." Defs.' L.R. 56.1 Stmt., Ex. A at 53:13-19 (emphasis added). Morgan's testimony suggests that during this conversation, Dr. Orenstein was indicating that Wexford (or someone else), not Dr. Orenstein himself, provided final authorization for MRI requests.

But even were the Court to assume that Dr. Orenstein did have the power to order or schedule an MRI, Morgan has not adduced evidence that his failure to do so amounts to deliberate indifference. Morgan contends that the "sheer fact that Plaintiff was still in pain . . . warranted further diagnostic testing to identify the source of his pain." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5. But there is likely on question regarding the cause of Morgan's pain—it was the TMJ. The operative question is whether an MRI would have led to some form of treatment that would have alleviated or reduced Morgan's pain. On this, however, Morgan has offered no evidence. In addition, "the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles*, 771 F.3d at 411 (quoting *Estelle*, 429 U.S. at 107). And there is no evidence in the record—such as expert testimony or testimony by the oral surgeon—that would permit a finding that Dr. Orenstein's medical judgment "departed significantly from accepted professional norms." *Pyles*, 771 F.3d at 411. In this regard, the Court notes that in 2015, before Morgan's incarceration at Stateville, two requests for an MRI had been denied.

In sum, Morgan has not offered any evidence, medical or otherwise, that would permit a reasonable jury to find that Dr. Orenstein's decision not to order an MRI

6

represented a significant departure from accepted professional norms or indicates a lapse in medical judgement. See *Pyles*, 771 F.3d at 412 (holding doctor was not deliberately indifferent to plaintiff's pain by refusing to schedule an MRI). "Without any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact." *Walker v. Zunker*, 30 F. App'x 625, 628 (7th Cir. 2002).

Similarly, Morgan has not offered evidence that would permit a reasonable jury to find that Dr. Orenstein was deliberately indifferent to his medical needs by failing to order surgery. Dr. Orenstein is not qualified to diagnose TMJ-related conditions, so he referred Morgan to an oral surgeon, Dr. Scheive. Morgan asserts that the oral surgeon "recommended surgery." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5. But Morgan's medical records do not actually say that. Rather, the records indicate that the oral surgeon suggested a potential diagnosis for Morgan and noted that he "*may* need surgery." Defs.' L.R. 56.1 Stmt. ¶ 30 (emphasis added). No reasonable jury could find that this amounted to a recommendation that Morgan receive that treatment—at least without further explanation from the surgeon or some other medical professional, which is lacking here. And that aside, even if one were to read the oral surgeon's note as a recommendation for surgery, that would not be enough to establish *Dr. Orenstein's* deliberate indifference. See *Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018) (granting summary judgement in favor of doctor that did not comply with specialist's recommendation for further treatment). Specifically, there is no indication that Dr. Orenstein had the authority to approve or order oral surgery for Morgan. Dr. Orenstein asserts—and Morgan offers no basis to dispute—that his supervisor, Dr. Henzy, was

the person with responsibility for acting on the oral surgeon's recommendation. Defs.' L.R. 56.1 Stmt. ¶¶ 37-39; Def.'s Mot. for Summ. J., Ex. G. at 42:7-14; 43:6-13.

Even without this, the undisputed evidence supports Dr. Orenstein's contention that he relied on other medical professionals, including the outside oral surgeon, to determine the appropriate treatment once he recognized that Morgan's condition could require treatment beyond his own expertise. *See* Pl.'s Resp. to Defs.' L.R. 56.1 Stmt. ¶¶ 27-29. The bottom line is that Dr. Orenstein cannot be held liable for the fact that Morgan did not get oral surgery, seeing as how he lacked the authority or the capability to act on any recommendation by the oral surgeon to actually provide the surgery. *See Mitchell v. Kallas*, 895 F.3d 492, 498–99 (7th Cir. 2018) (affirming summary judgment of no deliberate indifference for defendant who lacked authority to order the requested medical treatment).

Morgan also asserts that Dr. Orenstein displayed deliberate indifference by continuing to recommend ineffective treatments, such as applying a warm compress to his jaw. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 4. But Morgan has not provided evidence of any additional action Dr. Orenstein could have taken to treat Morgan's TMJ that was within the scope of his medical expertise as a general dentist. *See Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018) (affirming summary judgment for defendant where plaintiff did not provide evidence that defendant withheld a more effective alternative treatment option). Finally, Morgan's contention that he did not receive *any* treatment for his jaw pain is not supported by the record. To the contrary, it is undisputed that Morgan received over fifteen prescription orders, including for pain medications, to treat his TMJ. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 27. Dr. Orenstein's

inability to eliminate Morgan's pain does not indicate that he was deliberately indifferent to Morgan's medical needs. See Armstead v. Marandet, No. 20-2891, 2021 WL 5492983, at *2 (7th Cir. Nov. 23, 2021) ("[T]he Eighth Amendment does not guarantee complete pain relief or recovery.").

Morgan cites Greeno v. Daley in support of his deliberate indifference claim against Dr. Orenstein. But the conduct at issue in Greeno is nothing like Dr. Orenstein's conduct. In Greeno, the plaintiff suffered from chronic heartburn and vomiting blood for several years, and a prison doctor noted in his chart the need to rule out chronic peptic ulcer and gastro-esophageal reflux disease. Greeno, 414 F.3d at 649. But prison officials failed to perform tests to rule out these conditions, and medical personnel continued to prescribe medications that exacerbated the plaintiff's condition before ultimately issuing a ban on treatment for the plaintiff. Id. at 649-51. The Seventh Circuit held that the medical defendants' conduct, which included withholding pain medication and rejecting a physician's medical testing recommendations, could lead a reasonable jury to conclude that they were deliberately indifferent to the plaintiff's medical condition. Id. at 653-55.

Unlike the medical defendants in Greeno, Dr. Orenstein never denied treatment to Morgan or ignored his requests to see a specialist. On the contrary, Dr. Orenstein referred Morgan to an oral surgeon multiple times, prescribed him various pain medications, and provided multiple treatments to address Morgan's pain, including a night guard. Defs.' L.R. 56.1 Stmt. ¶ 32. There is no evidence in the record to suggest that the treatment Morgan received from Dr. Orenstein was "so blatantly inappropriate as to evidence intentional mistreatment." Greeno, 414 F.3d at 654 (citation omitted).

Although Dr. Orenstein did not provide Morgan with the specific treatments he sought, that is insufficient to permit a reasonable jury to find deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim.").

For all of these reasons, Dr. Orenstein is entitled to summary judgment.

### 2.     Warden Pfister

Nonmedical prison administrators like Pfister are "entitled to defer to the judgment of jail health professionals." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Nonmedical officials can be liable for a constitutional violation, however, where they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner" and disregard an excessive risk to the prisoner's health. *Hayes*, 546 F.3d at 523, 527 (citation omitted). "The question is whether the non-medical defendants had any duty to do more than they did, in light of their knowledge of the situation." *Id.* at 527.

An inmate's communications with prison officials can provide the predicate for Eighth Amendment liability. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). But "[t]he plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Morgan argues that Pfister had actual knowledge of his condition yet ignored his "pleas about his serious condition and lack of adequate and effective medical care." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2. Morgan contends that he made Pfister aware of his condition through grievances, a letter, and an in-person conversation. *Id.*

10

at 4. Specifically, Morgan testified that in his written and oral communications to Pfister he stated that he was experiencing serious jaw pain, described the treatment Dr. Orenstein was providing, and reported that this treatment was ineffective. See Def.'s Mot. for Summ. J., Ex. B at 78:14-79:3.

But even if Pfister had sufficient awareness of Morgan's condition, he was entitled to rely on the judgment of medical professionals concerning the proper treatment of Morgan's condition. Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008); Smith v. Wexford Health Sources, Inc., No. 15 C 3730, 2017 WL 5464367, at *6 (N.D. Ill. Nov. 14, 2017) ("[A] high-level non-medical official generally is shielded from liability where an inmate is under the care of medical personnel."). And as indicated earlier in this decision, Morgan has not offered evidence that, during the relevant time period, any medical professional had actually ordered treatment that was not being provided. Rather, all that exists is the vague and unexplained reference in the outside oral surgeon's notes that Morgan "may" need surgery.

In sum, the evidence is insufficient to permit a reasonable jury to conclude that Pfister was on notice that the medical care Morgan was getting was so inadequate as to constitute an excessive risk to his health—more specifically, that something harmful was being done to Morgan or that he was not getting medically appropriate treatment and was at risk of harm as a result. Pfister is entitled to summary judgment.

**B.     Claim against Wexford**

The Court turns next to Morgan's claim against Wexford. The Seventh Circuit has held that the theory of municipal liability described in Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), applies to "private corporations

acting under color of state law," including Wexford. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). "[A] *Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation." *Id.* at 236. In addition, the plaintiff must show that the policy or practice was the "direct cause" or "moving force" behind the constitutional injury. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (citation omitted).

Morgan cannot sustain a *Monell* claim against Wexford because he has not provided evidence that would permit a jury to find an underlying constitutional violation. *Pyles*, 771 F.3d at 412 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). But even if the contrary were true, Morgan's *Monell* claim fails because he has not offered evidence that would permit a jury to find that the policy he claims actually existed or that the claimed policy is connected to the denial of his requested medical treatments.

Morgan contends that Wexford has a policy or practice of delaying or denying medical treatment in order to reduce costs.[2] Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6-7. But he has cited no evidence of this cost-cutting policy other than his own experience and vague testimony about the experiences of other inmates. *See id.* This is insufficient to permit a reasonable jury to find that Wexford actually had a widespread

---

[2] In his complaint, Morgan cited sections of the Wexford Provider Handbook in support of his claim that Wexford maintained various policies that facilitated the delay and/or denial of adequate medical care. Compl. ¶¶ 15-21. But Morgan asserted only his cost-cutting policy argument in his response to Wexford's motion for summary judgement. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6-7. Thus he has waived any argument arising from the terms of the Wexford Provider Handbook. *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

practice of refusing or denying necessary medical care for cost-cutting reasons. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("One broad, vague statement about an occurrence affecting other inmates in a detention facility does not support the inference of a 'widespread' custom."); *Montague v. Wexford Health Sources, Inc.*, 615 F. App'x 378, 379 (7th Cir. 2015) (holding opinion of plaintiff and other inmates insufficient to establish policy of purposeful delay of medical treatment).

In sum, Morgan has not presented evidence from which a reasonable jury could conclude that Wexford had a cost-cutting policy that was the "moving force" behind his allegedly inadequate medical treatment. Wexford is entitled to summary judgment.

## Conclusion

The Court thanks attorney Courtney Carter of Chilton Yambert Potter LLC for her service as recruited counsel for plaintiff Jeryme Morgan. For the reasons described above, the Court grants both defendant Pfister's motion for summary judgment [dkt. 106] and the motion for summary judgment filed by defendants Dr. Orenstein and Wexford [dkt. 109]. The Court directs the Clerk to enter judgment in favor of defendants and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 28, 2024